# IN THE UNITED STATES DISTRICT COURT FOR THE
# WESTERN DISTRICT OF MISSOURI
# WESTERN DIVISION

| | |
|---|---|
| United States of America, | ) |
| | ) |
|         Plaintiff, | ) |
| | ) |
| v. | )    **Criminal Action Number** |
| | )    **08-0116-01-CR-W-SOW** |
| Thomas Casey, | ) |
| | ) |
|         Defendant. | ) |

## Report and Recommendation

Pending before the Court is the MOTION TO SUPPRESS ILLEGALLY OBTAINED EVIDENCE AND STATEMENTS filed June 17, 2008 (Doc. #16) by defendant Thomas Casey ("Casey"). On July 18, 2008, the undersigned held an evidentiary hearing on Casey's motion. Casey was present and was represented by his counsel, Assistant Federal Public Defender Anita Burns. The government was represented by Assistant United States Attorney Jess Michaelsen. At the evidentiary hearing, the government called Officers Michael McLaughton and Jeffrey Scott Ramsey both of the Peculiar, Missouri Police Department. Casey called one witness, Larry Gadberry. Eight exhibits were offered and received into evidence:

| | |
|---|---|
| Govt. #1 | Johnson SUMMONS |
| Govt. #2 | Peculiar Mo. City Ordinances, §§ 385.010, 385.150 |
| Govt. #3 | Municipal clerk correspondence |
| Deft. #1 | Peculiar Mo. City Ordinances, § 385.010 |
| Deft. #2 | MO. REV. STAT. § 307.350 |
| Deft. #3 | MO. REV. STAT. § 307.130 |
| Deft. #4 | MO. REV. STAT. § 307.135 |
| Deft. #5 | 11 MO. CODE STATE REG. § 50-2.270 |

On the basis of all the evidence adduced at the evidentiary hearing, the undersigned submits the following:

**PROPOSED FINDINGS OF FACT**

1. On February 12, 2008, Michael McLaughlin ("Officer McLaughlin") was on duty with the Peculiar, Missouri Police Department. Tr. at 4-6.

2. At approximately 1:43 p.m. on that date, Officer McLaughlin was conducting a routine patrol in a business area in Peculiar when he passed a maroon Chrysler Cirrus traveling opposite him on the street. Tr. at 6, 11-12.

3. Officer McLaughlin noted that the Chrysler Cirrus had a cracked front windshield. Tr. at 6.

4. Officer McLaughlin then turned his vehicle around and stopped the Chrysler Cirrus at Main Street and North Street in Peculiar. Tr. at 6, 13.

5. Officer McLaughlin approached the vehicle and asked for identification from the driver, Ronald Johnston, and a passenger in the vehicle. Tr. at 7.

6. According to Officer McLaughlin, anytime that he stops a vehicle he asks for identification from all occupants. Tr. at 21.

7. The passenger stated that he did not have identification with him but gave Officer McLaughlin a social security number. Tr. at 7.

8. Officer McLaughlin returned to his vehicle and checked the social security number through his squad car radio. Tr. at 7.

9. Officer McLaughlin was told that the given social security number was not on file. Tr. at 7.

10. At that time, Scott Ramsey ("Officer Ramsey"), another policeman with the Peculiar Missouri Police Department, arrived at the scene. Tr. at 29-30.

11. Officer McLaughlin then returned to the stopped Chrysler Cirrus, asked the passenger to exit the vehicle, and told the passenger that he [Officer McLaughlin] did not believe he was telling the truth. Tr. at 7.

12. Thereafter, the passenger, who was acting nervously, stated, "I screwed up, I lied because I've got a warrant." Tr. at 7, 30.

13. At that time, Officer McLaughlin placed the passenger under arrest. Tr. at 7-8.

14. The ensuing search of the passenger's person disclosed that he was carrying a .380 pistol, a metal spoon with white residue, and two dirty syringes. Tr. at 7-8, 21, 30.

15. The passenger was subsequently identified as Casey. Tr. at 21.

16. The sole reason for stopping the Chrysler Cirrus was the observed cracked windshield. Tr. at 13.

17. Officer McLaughlin described the crack in the windshield of the Chrysler Cirrus as extending from below the rear view mirror and across in front of the driver's straight-ahead view out of the windshield. Tr. at 8-9, 13-14.[1]

18. The City of Peculiar has a defective equipment ordinance which provides:

> No person shall on the streets of the city drive a motor vehicle which is in such defective mechanical condition to be reasonably likely, because of such defective mechanical condition, to cause damage to persons or property while being so driven. Deft. Ex. #1

19. Officer McLaughlin believed that the cracked windshield on the Chrysler Cirrus could have caused damage to persons or property while the vehicle was being driven. Tr. at 19.

20. Officer McLaughlin believed that the crack in the windshield of the Chrysler Cirrus interfered with the driver's vision. Tr. at 20.

21. In his four years with the Peculiar, Missouri Police Department, Officer McLaughlin has issued 25 to 30 citations for cracked windshields under Peculiar's defective equipment ordinance. Tr. at 9.

---

[1] The findings of fact are based on the testimony that the Court found credible and that are necessary to a ruling herein. Casey offered testimony from Larry Gadberry, an investigator with the Public Defender's Office in Cass County, Missouri. As part of Mr. Gadberry's testimony, he recounted a conversation wherein Ronald Johnson, the driver of the Chrysler Cirrus, described the crack in his now-repaired windshield. Mr. Johnson's description of the crack differed from the in-court testimony of Officers McLaughlin and Ramsey. While the Court finds that Mr. Gadberry himself was credible in recounting Mr. Johnson's description, the Court finds Mr. Johnson's description to be less credible than the two testifying officers. In making credibility determinations, the Court considered (1) the demeanor of the witnesses on the stand, (2) the interest the witnesses had in the outcome of the motion, and (3) the opportunity of the witnesses to hear, observe, and recall what was said or done.

22. Officer McLaughlin has never been told that it was improper to issue a ticket for cracked windshields under Peculiar's defective equipment ordinance. Tr. at 10.

23. Following the traffic stop, Officer Ramsey issued a summons, No. 071494188, to Ronald Johnson, the driver of the Chrysler Cirrus, for "Defective Equipment to wit: Broken Windshield." Tr. at 32, Govt. #1.

24. Officer Ramsey observed the windshield of the Chrysler Cirrus noting that it "was cracked from right around the mid area . . . close to the rear view mirror, approximately one foot, twelve inches down from the top of the roof line . . . [running] across the windshield and in front of the driver's side." Tr. at 33.

25. In his three and one-half years with the Peculiar, Missouri Police Department, Officer Ramsey has issued 10 to 15 citations for cracked windshields under Peculiar's defective equipment ordinance. Tr. at 34.

26. Officer Ramsey has never been told that it was improper to issue a ticket for cracked windshields under Peculiar's defective equipment ordinance. Tr. at 34.

27. Officer Ramsey believed that the crack in the windshield of the Chrysler Cirrus interfered with the driver's vision and presented a danger of the windshield collapsing in on the vehicle occupants. Tr. at 41.

28. Both Officer McLaughlin and Officer Ramsey were trained that broken windshields were covered by the Peculiar defective equipment ordinance. Tr. at 14-15, 19-20, 35.

## PROPOSED CONCLUSIONS OF LAW

The Fourth Amendment provides that "the right of the people to be secure in their persons, houses,[2] papers, and effects, against unreasonable searches and seizures, shall not be

---

[2] The stop of an individual in an automobile raises many of the same concerns as a search of an individual's home.

> Automobile travel is a basic, pervasive, and often necessary mode of transportation to and from one's home, workplace, and leisure activities. Many people spend more hours each day traveling in cars than walking on the streets. Undoubtedly, many find a greater sense of security and privacy in traveling in an automobile than they do in exposing themselves by pedestrian or other modes of travel. Were the individual subject to unfettered governmental

violated. . . ." U.S. CONST. amend. IV. As made clear in the Fourth Amendment, the constitution does not forbid all searches and seizures, but only <u>unreasonable</u> searches and seizures. *Elkins v. United States*, 364 U.S. 206, 222, 80 S.Ct. 1437, 1446 (1960). Nonetheless, as the United States Supreme Court pointedly noted over one hundred years ago:

> No right is held more sacred, or is more carefully guarded, by the common law, than the right of every individual to the possession and control of his own person, free from all restraint or interference of others, unless by clear and unquestionable authority of law.

*Union Pacific Railroad Co. v. Botsford*, 141 U.S. 250, 251, 11 S.Ct. 1000, 1001 (1891).

In many search and seizure scenarios, the question of legal authority (as well as reasonableness) is presumptively satisfied by a judicially-issued warrant. However, over the years, many exceptions to the warrant requirement have been recognized. For instance, and pertinent to the issue in this case, in *Terry v. Ohio*, 392 U.S. 1, 88 S.Ct. 1868 (1968), the Supreme Court held that a law enforcement officer can stop and briefly detain a person for investigatory purposes, even without a warrant, if the officer has a reasonable suspicion – supported by articulable facts – that criminal activity "may be afoot," even if the officer lacks probable cause for an arrest. *Id*. at 30, 88 S.Ct. at 1884. However, the officer conducting such an investigatory stop must be able to articulate something more than an "inchoate and

---

> intrusion every time he entered an automobile, the security guaranteed by the Fourth Amendment would be seriously circumscribed. As *Terry v. Ohio* recognized, people are not shorn of all Fourth Amendment protection when they step from their homes onto the public sidewalks. Nor are they shorn of those interests when they step from the sidewalks into their automobiles.

*Delaware v. Prouse*, 440 U.S. 648, 662-63, 99 S.Ct. 1391, 1400-01 (1979).

5

unparticularized suspicion or 'hunch.'" *Id*. at 27, 88 S.Ct. at 1883. Moreover, the mere fact that an officer's suspicion or hunch, in fact, was well-founded is <u>not</u> dispositive for a constitutional analysis, rather, the Fourth Amendment requires "some level of objective justification for making the stop." *INS v. Delgado*, 466 U.S. 210, 217, 104 S.Ct. 1758, 1763 (1984).

The rights protected by the Fourth Amendment are implicated in this case by Officer McLaughlin's decision to stop the automobile being driven by Johnson and thereafter to detain and question the occupants of the automobile. *Delaware v. Prouse*, *supra*, 440 U.S. at 653, 99 S.Ct. at 1395. However, it is well-settled that "[a]n investigation stop does not violate the Fourth Amendment if the police have a reasonable suspicion that the vehicle or its occupants are involved in criminal activity." *United States v. Bell*, 183 F.3d 746, 749 (8th Cir. 1999). In this case, as essentially conceded by the parties, the efficacy of Casey's motion to suppress turns on whether Officer McLaughlin had the requisite reasonable suspicion to stop the Chrysler Cirrus because of the cracked windshield. If he did have the requisite reasonable suspicion, the stop was proper and all of the incriminating acts that transpired thereafter are admissible.[3] *See*, *e.g.*, *United States v. Thomas*, 93 F.3d 479, 485 (8th Cir. 1996) (police have authority to stop a vehicle when there is probable cause to believe that a traffic violation has occurred). On the other hand, if the traffic stop was improper, then the ensuing incriminating evidence may be subject to suppression.

---

[3] A justifiable traffic stop "may include asking for the driver's license and registration, asking the driver to sit in the patrol car, and asking about the driver's destination and purpose." *United States v. Alegree*, 175 F.3d 648, 650 (8th Cir. 1999). Moreover, if the officer's suspicions become heightened during the course of such routine investigation, the officer may be justified in expanding the scope of the investigation. *Id.*; *United States v. White*, 42 F.3d 457, 460 (8th Cir. 1994).

6

In support of his motion to suppress, Casey relied primarily on the Eighth Circuit's decision in *United States v. Washington*, 455 F.3d 824 (8th Cir. 2006). In *Washington*, an officer stopped a vehicle in Omaha, Nebraska, after observing a cracked windshield that extended "all the way across the windshield at about eye level." *Id*. at 825. The officer believed that the cracked windshield violated the Nebraska "vision obstruction" statute, NEB. REV. STAT. 60-6,256.[4] *Id*. at 826. During the course of the ensuing traffic stop, evidence was uncovered that implicated the vehicle passenger in a crime. *Id*. at 825. During the passenger's ensuing criminal proceedings, it was argued that the initial traffic stop was unjustified. *Id*. at 826.

In response, the government <u>conceded</u> that the officer "made a mistake of law in believing that a cracked windshield violated the vision obstruction statute." *Id*. Moreover, the government further <u>conceded</u> "that no other Nebraska law or Omaha city ordinance exists which bans driving with a cracked windshield." *Id*. at 827. In light of these concessions and the plain language of the Nebraska statute, the Eighth Circuit concluded:

> [W]e are not confronted with any "counterintuitive and confusing" motor statutes that might prohibit cracked windshields. Rather, § 60-6,256 clearly does not prohibit the conduct [the officer] thought it did, and this is an unusual case as the government concedes that no other motor statute or ordinance forbids cracked windshields. Moreover, the government has not presented any evidence of

---

[4] That state statute provides:

> It shall be unlawful for any person to operate a motor vehicle with any object placed or hung in or upon such vehicle, except required or permitted equipment of the vehicle, in such a manner as to obstruct or interfere with the view of the operator through the windshield or to prevent the operator from having a clear and full view of the road and condition of traffic behind such vehicle.

NEB. REV. STAT. 60-6,256.

7

> police manuals or training materials, state case law, legislative
> history, or any other state custom or practice that would create
> some objectively reasonable basis for the traffic stop.

*Id*. at 827-28. Consequently, the court found that "the traffic stop was unconstitutional" and the subsequently obtained incriminating evidence should have been suppressed. *Id*. at 828.

In critical respects, the Court finds that the *Washington* case is distinguishable. First, and most importantly, the municipal ordinance at issue herein is broader and more generalized than the narrow state statute at issue in *Washington.* The Peculiar ordinance provides:

> No person shall on the streets of the city drive a motor vehicle
> which is in such defective mechanical condition to be reasonably
> likely, because of such defective mechanical condition, to cause
> damage to persons or property while being so driven.

PECULIAR (MO.) MUNIC. ORD. § 385.010. In addition, unlike in *Washington*, there is evidence that the Peculiar officers were taught and instructed that a broken windshield fell within the purview of this ordinance.

Casey argues that the term "defective mechanical condition" is not defined in the ordinance. The Court concludes that such a formal definition is unnecessary inasmuch as the ordinance itself defines the term – a defective mechanical condition is one that is reasonably likely to cause damage to persons or property while the subject vehicle is being driven. The ordinance's utilization of a "reasonableness" standard requires that officers exercise their best judgment in determining potential violations. Given the language of the ordinance and the obvious dangers posed by a broken windshield (implosion of the windshield, obstructed visibility), the Court cannot conclude that the broken windshield was not a defective mechanical condition.

Moreover, even if the broken windshield was not – in fact – a violation of PECULIAR (MO.) MUNIC. ORD. § 385.010, the Court nonetheless would find that any mistake of law was "objectively reasonable." In *United States v. Martin*, 411 F.3d 998 (8th Cir. 2005), the Eighth Circuit affirmed the denial of a motion to suppress based on an officer's objectively reasonable belief that operating a motor vehicle with one non-functioning brake light violated a particular provision of tribal law. *Id.* at 1001-02. The Court determined that the officer's mistake of law was objectively reasonable based on the statute's "counterintuitive and confusing" language and concluded that "the level of clarity [of the statute] falls short of that required to declare [the officer's] belief and actions objectively unreasonable under the circumstances." *Id.* at 1002. The officer argued that his mistaken interpretation of the law (*i.e.*, that it required two functioning brake lights) was "common knowledge." In light of the ambiguities in the statute, the *Martin* court noted that the following factors would be relevant to the objective reasonableness of the officer's belief:

> [T]he drafting history of the Code, prior enforcement of the Code's provision concerning 'stop lights,' the training of police concerning the requirements of the Code, or previous judicial interpretations of the 'stop lights' provision.

*Id.* at 1001. In this case, while there is no evidence before the Court concerning the drafting history of PECULIAR (MO.) MUNIC. ORD. § 385.010 or judicial interpretation of the language, there was evidence indicating that the officers were trained that the city ordinance covered cracked windshields and that the ordinance had in fact been previously enforced against cracked windshields. Accordingly, at a minimum, if there was a mistake of law herein, the mistake was objectively reasonable and the ensuing traffic stop was constitutional.

Accordingly, it is

9

**RECOMMENDED** that the Court, after making an independent review of the record and applicable law, enter an order **DENYING** Casey's MOTION TO SUPPRESS ILLEGALLY OBTAINED EVIDENCE AND STATEMENTS filed June 17, 2008 (Doc. #16).

Counsel are reminded that each has 10 days from the date of receipt of a copy of this report and recommendation to file and serve specific objections to the same. A failure to file and serve timely objections shall bar attack on appeal of the factual findings in this report which are accepted or adopted by the district judge except upon the ground of plain error or manifest injustice.

                                                */s/ John T. Maughmer*
                                                **John T. Maughmer**
                                          **United States Magistrate Judge**